OPINION BY STABILE, J.:
*462 Appellant Wasba Leland appeals from his judgment of sentence for being a felon in possession of a firearm under 18 Pa.C.S.A. § 6105 (" Section 6105").[1] Appellant argues that the trial court violated his due process rights by (1) failing to obtain his plea on the Section 6105 charge prior to his jury trial, and (2) failing to inform him that it was severing the Section 6105 charge from other charges that the jury would decide. We affirm.
On July 19, 2015, Appellant had an altercation with Antonio Smith in which Smith was shot in the leg. Appellant left the scene before police arrived. The following month, a detective on the Fugitive Task Force learned that Appellant had been seen at a mall. Upon arriving at the mall, the detective saw Appellant with his girlfriend, Melissa Williams. Appellant dropped the bags he was carrying and fled, but police officers apprehended him after a struggle. Williams was also taken into custody on an unrelated matter. Inside her purse was a handgun that was the source of a bullet casing recovered at the location of Smith's shooting.
On September 8, 2015, a grand jury indicted Appellant on charges of robbery, aggravated assault, carrying a firearm without a license, and carrying a firearm in public in Philadelphia. In addition, because Appellant was a convicted felon, he was indicted under Section 6105 for being a felon in possession of a firearm. The grand jury authorized the Commonwealth to file bills of information in accordance with the indictment.
On September 29, 2015, the Commonwealth filed bills of information that included the Section 6105 charge. On October 13, 2015, counsel for Appellant filed discovery requests on Appellant's behalf and an omnibus pretrial motion seeking dismissal of the indictment on several grounds. The omnibus motion expressly acknowledged that Appellant was charged under Section 6105.
Subsequently, the Commonwealth moved to consolidate the charges against Appellant's with the charges against another individual, Basil Johnson. The Commonwealth stated in this motion that Appellant was charged under Section 6105. On April 28, 2016, the court granted the motion for consolidation.
On November 27, 2016, Appellant filed a motion in limine requesting exclusion of the handgun in Williams' handbag that formed the basis for the Section 6105 charge. On November 28, 2016, the trial court denied Appellant's motion.
On November 29, 2016, the trial court granted a continuance after Appellant requested additional time to consider the Commonwealth's plea offer. Appellant's attorney conferred with Appellant, who declined the offer.
On March 6, 2017, following jury selection, but outside the presence of the jury, the court discussed the plea offer with Appellant. The court stated that the Commonwealth offered a sentence of seven to *463 fourteen years' imprisonment for aggravated assault followed by six years' probation on the Section 6105 charge. N.T., 3/6/17, at 3-4. The court further informed Appellant of the maximum sentence that he could receive on all the charges upon which the Commonwealth was proceeding, including five to ten years' imprisonment for violating Section 6105. The colloquy was as follows:
THE COURT: Now, let's talk a little bit about your charges. The Commonwealth is proceeding to trial on aggravated assault and robbery both as felonies of the first degree ... [carrying a firearm without a license and carrying a firearm in public in Philadelphia] graded as a felony of the third degree [and] misdemeanor of the first degree, respect[ive]ly, and possessing a criminal instrument. Aggravated assault and robbery have a statutory maximum of 10 to 20 years' incarceration. The violation of the Uniform Firearms Act, [for carrying a firearm without a license has] a maximum of 3½ to 7 years' incarceration, [carrying a firearm in public in Philadelphia], 2½ to 5 years' incarceration; possessing a criminal instrument, 2½ to 5 years' incarceration. And actually, [ Section] 6105 is not on this list. The maximum for that is 5 to 10 [years' imprisonment]. Is that correct?
[DEFENSE COUNSEL]: Yes, your Honor.
THE COURT: So the aggregate sentence, in other words, the total maximum sentence that you could get for if you were convicted of all the charges that the Commonwealth is proceeding under, is 33½ to 67 years' incarceration. Do you understand that?
[APPELLANT]: Now, I do.
N.T., 3/6/17, at 8-9. Appellant stated that he and his attorney had gone over the Commonwealth's allegations and the evidence. Id. at 15. Appellant said that he had "no further questions," indicating he was ready to proceed to trial. Id. at 17.
The jury was sworn, and Appellant pleaded not guilty to the charges of robbery, aggravated assault, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possessing an instrument of crime. Id. at 19-20. The court did not refer to the Section 6105 charge to prevent the jury from learning about his criminal record while deciding the other charges. Nor did Appellant enter a plea on the Section 6105 charge.
Several police officers and a complainant testified regarding Appellant's alleged robbery, assault, and possession of a gun during the incident with Smith. The defense presented Appellant and another witness, and the Commonwealth called a police officer in rebuttal. The jury found Appellant not guilty of aggravated assault, robbery, and possessing an instrument of crime, but guilty of carrying a firearm without a license and carrying a firearm in public in Philadelphia.
The following then took place:
[THE COMMONWEALTH]: Your Honor, we still have the [ Section] 6105 [charge].
* * * *
THE COURT: That's right. How do you wish to proceed with regards to that?
[DEFENSE COUNSEL]: Your Honor, my concern with the [ Section] 6105 charge is that [Appellant] never was arraigned on [this charge] and defense never moved to sever [it from the other charges].
THE COURT: It was done for you ... If we hadn't severed, the jury would have had to hear that he had a prior conviction disqualifying him from possessing a firearm at all. Where is the prejudice? I see a benefit. In terms of *464 arraignment, if you're talking about what he said in front of the jury, that's not a part of procedure. That's more policy. It has no significance in the process.
[DEFENSE COUNSEL]: If Your Honor would just note my objection.
THE COURT: It's noted and overruled. How do you wish to proceed with regard to [the Section] 6105 [charge]?
[DEFENSE COUNSEL]: Your Honor, we're going to waive.
THE COURT: All right. In that case then I'm going to dismiss the jury.
[DEFENSE COUNSEL]: Yes, Your Honor.
THE COURT: Then we'll come back for waiver. That would be a waiver with testimony or by stipulation?
[DEFENSE COUNSEL]: Your Honor, we can do the waiver now.
THE COURT: In other words, stipulated trial?
[DEFENSE COUNSEL]: Yes.
THE COURT: All right. Let's do that now.
[THE COMMONWEALTH]: Your Honor, in that I would mark and move or I guess seek to admit all non-hearsay testimony from the trial, and I would mark and move the defendant's criminal extract under CP-51 -
THE COURT: Actually, hold on. Sorry to interrupt you. I want to make sure I'm covering all the bas[e]s. Let me ask you some questions.
[APPELLANT]: Yes, sir.
THE COURT: Do you understand what we're talking about here?
[APPELLANT]: A little so far, Your Honor.
THE COURT: Let me explain it to you. We excluded the charge of 6105 from the jury's consideration in order to avoid causing prejudice to you before they even decided whether or not you possessed a firearm, because that particular charge requires as one of the elements to be proven that you've been convicted of some felony offense or other offense that would preclude you from possessing a firearm. Do you understand what I'm saying?
[APPELLANT]: Yes, Your Honor.
THE COURT: So what we generally do when that happens is that we leave that as a question to be answered only if you're found guilty on the other two VUFA charges, [carrying a firearm without a license and carrying a firearm in public in Philadelphia.] Do you follow me?
[APPELLANT]: Yes, Your Honor.
THE COURT: Since that did happen, now we've reached that phase, all right, where you have three choices as to how to proceed with that. All right. We can now ask the jury to deliberate on 6105 after the Commonwealth presents live evidence of it, right, or you can do that in front of me sitting without a jury, right, with evidence, or you could do that in front of me without the jury by way of stipulation, in other words, without live evidence, instead, both counsel agreeing that you have a certain conviction or convictions that would preclude you from possessing a firearm. Do you understand what I'm saying?
[APPELLANT]: Yes.
THE COURT: All right. Is that something that you would like to do, proceed by way of waiver as your counsel has indicated and stipulation?
[APPELLANT]: I would like -
THE COURT: Just to be clear, whatever decision I make would be on the 6105 charge only. All the other charges have been decided on by the jury.
[APPELLANT]: Correct.
*465 THE COURT: You still have a right to have the 6105, last remaining charge, decided by the jury or the other two options that I just mentioned. And what is your decision?
[APPELLANT]: I would like to waive the jury on deciding and put it in your judgment, your Honor.
N.T., 3/8/17, at 141-145.
During an additional colloquy, Appellant elected to proceed to trial on the Section 6105 count via stipulated evidence and without a jury. The court heard evidence of his prior felony and found Appellant guilty under Section 6105.
The court sentenced Appellant to five to ten years' imprisonment for his Section 6105 conviction and consecutive terms of probation on the firearms convictions. Appellant filed a timely appeal, and both Appellant and the court complied with Pa.R.A.P. 1925.
Appellant raises a single issue in this appeal:
Where the Commonwealth, at the commencement of a jury trial, did not indicate that it was proceeding to trial on [the Section 6105 charge], and the jury returned with guilty verdicts on related Uniform Firearms Act charges arising from the same incident, did ... the lower court err by then proceeding with the prosecution of [Appellant] for violation of § 6105, and did ... the lower court err by then convicting [Appellant] of that charge, where [he] was never arraigned on § 6105, had never entered a plea on that charge, had never agreed to a bifurcated trial on that charge and had objected to the court proceeding on that charge after the jury rendered its verdicts on the related offenses?
Appellant's Brief at 3. Appellant argues that defects in his arraignment violated his due process rights.
[Appellant] and defense counsel were first alerted that [Appellant] was actually on trial for violation of 18 Pa.C.S. § 6105 at the apparent conclusion of the jury trial. [Appellant] and/or defense counsel had not agreed to severance of the charge of persons not to possess firearms from the remaining charges brought at trial. [Appellant] was never arraigned on the charge of person not to possess firearms ( 18 Pa.C.S. § 6105 ). [Appellant] never entered a plea to that charge, even though he was convicted of that offense by the lower court. In this manner, [Appellant] and defense counsel were deprived by the court of any choice-a choice that would normally and should have been theirs to make-as to how [Appellant] was prosecuted for the charge of person not to possess firearms[.] In this manner, [Appellant] was deprived of due process of law.
Appellant's Brief at 9-10.[2] We hold that there was no due process violation.
The Rules of Criminal Procedure provide that during an arraignment, the court must notify the defendant of the nature of the charges against him, his right to counsel, his right to file motions, and the potential consequences for his failure to appear without cause for any proceeding in which his presence is required. Pa.R.Crim.P. 571(C). Our Supreme Court has written that
the purpose and necessity of an arraignment is to fix the identity of the accused, to inform him of the nature of the charges against him and to give him the opportunity of informing the court of his *466 plea thereto. Due process of law does not require that any technical form of procedure be followed so long as the identity of the accused is definite, sufficient notice of the charges is given, and ample opportunity to plead afforded.
Commonwealth v. Phelan , 427 Pa. 265, 234 A.2d 540, 545 (1968) (citations omitted). Arraignment may take place any time between the filing of the information and commencement of trial. It is commonplace for the court to conduct an arraignment immediately before trial to state the charges and inquire how the defendant wishes to plead.
Under Garland v. Washington , 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914), and its progeny, defects in an arraignment do not constitute reversible due process error unless they prejudice the defendant's rights. In Garland , an information charged the defendant with larceny, and he entered a plea of not guilty. A jury found him guilty, but he won a new trial, and the State filed a second information with the identical charge. There was no arraignment or plea on the second information. Once again, a jury found the defendant guilty. He appealed, claiming that he was entitled to relief because he had not entered a plea to the second information. The Supreme Court held that the lack of an arraignment was not an error of constitutional proportion, and a defendant who knowingly proceeds to trial despite the lack of a formal arraignment or plea is deemed to have waived his right to such proceedings. Id. at 646, 34 S.Ct. 456. The Court reasoned:
It is apparent that the accused was tried and convicted upon an information charging an offense against the law; that he had a jury trial, with full opportunity to be heard, and that he was in fact deprived of no right or privilege in the making of his defense, unless such deprivation arises from the fact that he was not arraigned and required to plead to the second information before trial. The object of arraignment being to inform the accused of the charge against him and obtain an answer from him was fully subserved in this case, for the accused had taken objections to the second information, and was put to trial before a jury upon that information in all respects as though he had entered a formal plea of not guilty.
Id. at 644-45, 34 S.Ct. 456. Due process of law, the Court said,
does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. Tried by this test it cannot for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage. All requirements of due process of law in criminal trials in a state, as laid down in the repeated decisions of this court, were fully met by the proceedings had against the accused in the trial court.
Id. at 645, 34 S.Ct. 456 (citations omitted). Garland overruled an earlier decision, Crain v. United States , 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896), which had held the absence of a formal arraignment deprived the defendant of due process because it was "essential to a legal trial." Id. at 645-46, 16 S.Ct. 952. "Technical" omissions of this nature, Garland explained, "were undoubtedly given much more weight formerly than they are now." Id. at 646, 16 S.Ct. 952. Garland adopted the dissent's view in Crain that "the defendant could not have been injured" by the absence of an arraignment, because "under *467 the circumstances, [it] would have been a wholly unimportant formality." Id.
Garland remains good law,[3] and Pennsylvania courts have applied it in four cases. In Commonwealth v. Robinson , 317 Pa. 321, 176 A. 908 (1935), the Court awarded defendant Pent a new trial due to material errors in the trial proceedings. Pent, Robinson, and a third defendant were charged with conspiracy to defraud a banking institution. Counsel for Robinson was the only defense attorney who participated in jury selection. Pent's name was not mentioned during jury selection. Robinson was the only defendant who entered a plea; Pent never entered a plea. The jury was sworn as to Robinson but not as to Pent. Counsel for Pent and the Commonwealth prepared a set of stipulated facts as to Pent, but these stipulations were never formally submitted to the judge or jury. The record shows that no plea was entered as to Pent, and that the jury was not sworn as to him. Pent's counsel did not participate in the examination or cross-examination of witnesses. The trial judge found Pent guilty by taking into consideration the facts developed as to Robinson; it refused to consider the stipulated facts agreed to by Pent's attorney and the Commonwealth. Had the court credited the stipulated facts, Pent would have been acquitted because the stipulations denied criminal intent. Under these circumstances, "[h]ad the case then gone to the jury as to Pent, without a jury sworn and plea entered, a conviction could not stand. Had the case then gone to the jury and Pent been acquitted, that acquittal would have been for naught as Pent could not plead former acquittal; as to him there had been no trial." Id. at 911.
Our Supreme Court reversed Pent's conviction and remanded for a new trial, because Pent never entered a plea and the jury was never sworn as to him, material "irregularities" that "str[uck] at the foundation of a trial." Id. In dicta, however, the Court cited Garland for the proposition that "[w]here ... a jury has been sworn and defendant participates in the trial, examining and cross-examining witnesses, a plea of not guilty is inherent in the act of defendant. It is not a case of waiver or presumption; his acts are tantamount to a plea." Id. at 914 ; see also id. at 915 (while entry of plea is "essential," "when defendant participates in the trial of a case fully, his action may be tantamount to a plea").
In Phelan , a capital case, the defendant pleaded guilty to two murders, and counsel represented him during his guilty plea hearing. Subsequently, he moved to withdraw his guilty plea, claiming he had not been arraigned because the record did not show that the indictments had been read to him during his guilty plea hearing. Citing Garland , the Supreme Court declined to grant relief.
The identity of the accused herein is unquestioned and, upon a reading of the record of the plea proceedings, one would have to completely distort his thinking to believe that Phelan was not fully aware of the nature of the charges lodged against him, or that he was denied ample opportunity of expressing his plea thereto. Hence, even in the absence of a reading of the contents of the indictments, all of the basic requirements of an arraignment were fully complied with in this case.
Id. at 545.
The third and fourth decisions are from this Court. Citing Garland , we held in *468 Commonwealth v. Saler , 84 Pa.Super. 281 (Pa. Super. 1925) :
The court did not err in refusing to arrest the judgment upon the ground that the defendant had not entered a plea of not guilty. The defendant was present at the trial and represented by counsel; assisted in the selection of the jury and the trial proceeded regularly in all respects as if the formal plea had been entered, the omission is not ground for a motion in arrest of judgment. The judgment should not be reversed for a formal defect of this sort after a trial on the merits ...
Id. at 287. Next, in Commonwealth v. Kinner , 137 Pa.Super. 256, 9 A.2d 177 (1939), the defendant did not enter a plea but was represented by counsel, was sworn as a witness in his own behalf, and denied the commission of the crime. Relying on Garland and Saler , we held that these events served as a substitute for a formal plea of not guilty. Id. at 179.
As suggested in Robinson'sdicta , and as our Courts have held in Pennsylvania's other post- Garland cases, when a defendant does not formally plead guilty to a charge but still actively defends against the charge, his actions are tantamount to a not-guilty plea. With this precept in mind, we turn to Appellant's argument that the lack of a formal plea on the Section 6105 charge violated his due process rights.
The record demonstrates that Appellant received notice of the Section 6105 charge (and all other charges) in the information filed on September 29, 2015. The Commonwealth also stated in its pretrial motion for consolidation that Appellant was charged under Section 6105. Appellant vigorously defended against all charges throughout this case. Prior to trial, he filed an omnibus motion acknowledging that he was charged under Section 6105 and a motion in limine seeking exclusion of the handgun underlying this charge. On the date of trial, the trial court expressly stated that the Commonwealth had made a plea offer that included a term of imprisonment for aggravated assault and a term of probation on the Section 6105 charge. Appellant stated that he had discussed the allegations and evidence with his attorney and had no further questions. In front of the jury, the court asked Appellant how he pleaded to robbery, aggravated assault, carrying a firearm without a license, carrying a firearm in public in Philadelphia and possessing an instrument of crime. Appellant pleaded not guilty. Neither the court nor Appellant mentioned the Section 6105 charge. The parties proceeded to trial, Appellant testified in his own defense, and the jury returned its verdict. The Commonwealth asked the court to proceed to the Section 6105 charge. Without asking how Appellant pleaded, the court inquired whether Appellant wanted the jury or the court to decide the charge. Appellant selected the court to decide the charge, and the court found him guilty. Since Appellant:
(1) defended himself with assistance of counsel throughout this case,
(2) stated that he had discussed the allegations and evidence with counsel,
(3) rejected the Commonwealth's offer of a sentence that included probation on the Section 6105 charge,
(4) pleaded not guilty to all non- Section 6105 charges at the beginning of trial, and
(5) elected to proceed to a non-jury trial on the Section 6105 charge following the verdict on the other charges,
his actions were equivalent to a not guilty plea despite the absence of a formal plea on the Section 6105 charge. The lack of a formal plea did not constitute a due process violation.
*469 Appellant also argues that the trial court violated his due process rights by severing trial on the Section 6105 charge without advising Appellant of its intent to sever this charge. While Appellant admits knowing that the Commonwealth charged him under Section 6105,
[this] did not equate to [Appellant] and defense counsel being aware that [Appellant] was being prosecuted for that offense at trial, or that [Appellant] and defense counsel agreed (before it had already been all but completed) to a bifurcated trial procedure for that offense, especially in the absence of any actual mention to [Appellant] or counsel that he was on trial for violation of [ Section] 6105 or that a bifurcated trial procedure was being employed. There was no basis to assume that [Appellant] and defense counsel knew what was in the prosecutor's and the court's minds or that [Appellant] and defense counsel agreed with the prosecutor's and the court's unstated intentions.
Appellant's Brief at 12. The decision on severance, Appellant contends, "should have been made by [Appellant] and his counsel" instead of the court. Id. at 15. He suggests that it might have helped him to proceed to trial on all charges at the same time, because "a defendant may desire to 'put all his eggs in one basket' and go for complete acquittal, rather than risk having a jury find out later about [his] disqualifying conviction, possibly after acquitting him of charges, and then feel misled right before considering the final [ Section] 6105 charge." Id. at 17.
Appellant's argument is unconvincing. In our view, the trial court's decision safeguarded, rather than prejudiced, Appellant's due process rights. As the trial court aptly observed, had it not severed the Section 6105 charge and omitted mention of this charge while arraigning Appellant on the other charges, the jury would have heard during arraignment and during trial on the other charges that Appellant had a prior conviction disqualifying him from possessing a firearm. The court properly severed the Section 6105 charge to prevent the jury from hearing this prejudicial fact during trial on the other charges.
We doubt that Appellant would have benefited from "put[ting] all his eggs in one basket" and proceeding to trial on all charges at the same time. Even without learning about his prior conviction, the jury found him guilty of two firearms violations. Had he gone to trial on all charges, the jury would have learned about his prior conviction, which surely would not have convinced them to change the verdicts on the firearms charges to acquittals. Indeed, this information might have induced the jury to change the not guilty verdicts on robbery and aggravated assault to guilty.
Judgment of sentence affirmed.

Section 6105 provides in relevant part: "A person who has been convicted of [a felony] enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1).

Our standard of review on this question of law is de novo. Commonwealth v. Gordon , 596 Pa. 231, 942 A.2d 174, 175 (2007).

See United States v. Wilford , 2016 WL 759174, **3-6 (D. Md. 2016) (under Garland , lack of arraignment or plea did not deprive defendant of due process, where defendant was aware of charges against him throughout proceedings and vigorously litigated every aspect of case).